**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

MED PRO BILLING, INC., a Florida corporation,

    Plaintiff,

v.

MERIDIAN BEHAVIORAL HEALTH LLC, a Delaware limited liability company,

    Defendant.
_____/

CASE NO. _____

[JURY DEMAND]

**COMPLAINT**

Plaintiff, Med Pro Billing, Inc., ("Med Pro"), by and through its undersigned counsel, hereby sues Defendant, Meridian Behavioral Health LLC ("Meridian"), and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This is an action for damages in excess of $75,000, exclusive of interest, attorneys' fees, and costs.

2. Med Pro is a Florida corporation organized and existing under the laws of the state of Florida.

3. Med Pro does business and operates in Broward County, Florida, and its principal office is located at 7200 W McNab Road, Tamarac, Florida 33321.

4. Med Pro is a citizen of Florida.

5. Meridian is a Delaware limited liability company with its principal place of business at 550 Main Street, New Brighton, Minnesota 55112.

6. Meridian is a citizen of Delaware and Minnesota.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

8. This Court has jurisdiction over Meridian pursuant to Fla. Stat. § 685.102, as this action arises out of or is related to an agreement which contains a Florida choice of law provision whereby Meridian consented to submit to the jurisdiction of the courts in Broward County, Florida.

9. This Court also has jurisdiction over Meridian pursuant to Fla. Stat. § 48.193(1)(a).

10. Venue is proper in the Southern District of Florida because the parties have consented to venue in Broward County, and because pursuant to 28 U.S.C. § 1391(b) a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

11. Med Pro renders billing and collection services on behalf of various healthcare providers, including but not limited to, verification of benefits, contracting and credentialing, utilization review, electronic claims processing and collection services.

12. At all times relevant to this Complaint, Med Pro was an established and successful healthcare billing service company which provided an array of administrative and collection services for its clients.

13. These are highly specialized and valuable services that Med Pro provided for its clients, and Med Pro had specialized computer software and processes to achieve maximum reimbursement for medical services provided by Med Pro's clients.

14. Meridian offers mental health, behavioral and substance abuse therapeutic care and treatment plans to its clients.

15. At all times relevant to the Complaint, Meridian was performing the acts alleged here by its authorized officers, agents, representatives and employees, who were acting within the course and scope of their employment and representation of Meridian.

16. All conditions precedent to the bringing of this action have been satisfied, waived, or otherwise performed.

## THE CONTRACT

17. In 2019, Med Pro learned that Meridian was interested in learning more about Med Pro's capabilities for providing administrative, billing and collection services for its clients.

18. Med Pro engaged in discussions with Meridian about entering into a business relationship whereby Med Pro would provide medical billing and collection services to Meridian, along with related administrative and consulting services regarding reimbursement.

19. Meridian had large amounts of past due and owing accounts receivable which Meridian was unable to timely collect because of its lack of expertise, inadequate processes, lack of management oversight and antiquated computer systems and billing practices.

20. Meridian sought assistance and "know how" from Med Pro to rework its billing and collection processes and also to collect its past due receivables.

21. After meetings and numerous exchanges of information, Meridian told Med Pro that it had been selected as the exclusive vendor for Meridian's billings and collections functions at all of Meridian's facilities.

22. Meridian, through its authorized employees, agents and representatives, represented to Med Pro that it would make a timely transition of all of Meridian's billing and collection business to Med Pro for a compensation package agreed to by the parties. Meridian also represented it would take appropriate steps to "onboard" Med Pro by providing it full access

to the Meridian accounting information and computer systems Med Pro needed to perform its contract with Meridian (hereinafter the "Representations").

23. On or about February 3, 2020, in reliance on Meridian's Representations, Med Pro entered into the Med Pro Billing Agreement (the "Billing Agreement") with Meridian, a copy of which is attached as **Exhibit A**.

24. Under the Billing Agreement, Section 2, Med Pro agreed to provide a variety of billing, administrative and consulting services, and Meridian agreed to pay for said services according to the schedules set forth in the Billing Agreement.

25. Pursuant to Section 5 A. of the Billing Agreement, the contract was to be in effect for an initial one-year period, to be automatically renewed after the first year.

26. Pursuant to Section 4 of the Billing Agreement, Meridian agreed to compensate Med Pro for services rendered pursuant to a compensation schedule based on a percentage of net collections.

27. The Billing Agreement also included additional administrative fees Meridian agreed to pay each month per Meridian facility for data base management and access to Med Pro's Business Intelligence and Analytics Portal.

28. Meridian also agreed to pay, as requested, for consulting and training, according to the fee list in Section 4 of the Billing Agreement.

29. Pursuant to Section 4 E. of the Billing Agreement, Med Pro was to submit a bill or invoice for payment for its services on the fifth day of each month, and Meridian was required to pay the billed/invoiced amount no later than 10 business days thereafter.

30. Pursuant to Section 4 F. of the Billing Agreement, Med Pro was entitled to review and audit Meridian's books and records to verify the Net Collections and the amounts due to Med Pro under the Billing Agreement.

31. Pursuant to Section 5 B. and C. of the Billing Agreement, the contract could be terminated, including upon the mutual agreement of the parties, but its termination would not release or discharge Meridian's obligation to compensate Med Pro for services performed prior to termination.

32. Section 5 C. of the Billing Agreement also provides that upon termination for any reason, Meridian would immediately remit to Med Pro all sums due and owing as of the date of termination.

33. Upon termination for any reason, under Section 5 C. Meridian was also required to compensate Med Pro monthly for a period of ninety (90) days from the effectual date of termination. Alternatively, Meridian could pay Med Pro an amount equal to three (3) months compensation towards outstanding receivables based on the average invoiced amount billed to Meridian by Med Pro for the preceding six (6) months.

34. Pursuant to Section 6 of the Billing Agreement, Med Pro was to be the sole supplier of billing and collection services to Meridian such that Meridian expressly represented and agreed that it did not have and would not have any contracts or agreements with any other person or entity to provide services substantially similar or the same as the services provided by Med Pro. Further, Meridian told Med Pro that it would turn over all of its billing and collections functions to Med Pro.

## **MED PRO'S PERFORMANCE**

35. Upon entering into the Billing Agreement and in reliance on Meridian's promises and the Representations, Med Pro expended substantial time, effort and resources to hire and train additional employees in order to perform its contractual obligations to Meridian.

36. In reliance on the Representations, Med Pro devoted its resources to the Meridian contract, turned down business from other customers and devoted its efforts exclusively to Meridian.

37. Med Pro was ready, willing and able to undertake its duties under the Billing Agreement and requested from Meridian the information and access it needed to transition the billing and collection functions to Med Pro.

38. Med Pro also sought from Meridian access to computer systems related to billing and collections so the Med Pro could perform its duties under the Billing Agreement.

39. Med Pro also provided Meridian valuable training, consulting and administrative services pursuant to the Billing Agreement to assist Meridian with billing and collections.

40. However, Meridian failed or refused to properly "onboard" Med Pro and did not provide access to all of Meridian's computer systems to allow Med Pro to efficiently do its job.

41. Some members of Meridian's management resisted having Med Pro involved in the collection efforts, and thereby hindered Med Pro's work.

42. Despite the agreement to turn over all billing and collection services to Med Pro, Meridian only turned over a portion of Meridian's aged accounts for collections, and many of the accounts were uncollectible or were missing essential information to permit Med Pro to perform. The status and condition of Meridian's accounts receivable were much worse than revealed to Med Pro during contract negotiation.

## COLLECTIONS DURING EARLY MONTHS

43. Despite these roadblocks, Med Pro was successful in collecting a portion of Meridian's aged accounts receivable under the Billing Agreement.

44. During February to May, Med Pro expended substantial time, effort and resources to hire and train additional employees in order to perform its contractual obligations to Meridian.

6

Med Pro also spent considerable time, effort and resources training Meridian's employees and helping Meridian straighten out its accounts receivable and billing/collection practices.

45. Per the Billing Agreement, Med Pro invoiced Meridian for the services rendered each month, and Med Pro requested the compensation Med Pro had earned, including compensation based on Net Collections under the specific compensation benchmarks set out in the Billing Agreement.

46. Med Pro sent Meridian an Invoice for $337,378.21 as compensation due Med Pro for certain collections and fees during April, 2020. A copy of said Invoice is attached as **Exhibit B.**

47. Meridian did not pay this Invoice when it became due, as required by the Billing Agreement.

48. Med Pro sent Meridian an Invoice for $518,156.80 as compensation due Med Pro for certain collections and fees during May, 2020. A copy of said Invoice is attached as **Exhibit C.**

49. Meridian did not pay this Invoice when it became due, as required by the Billing Agreement.

50. Meridian failed and refused to compensate Med Pro for services it had performed under the Billing Agreement, despite Med Pro collecting for Meridian large amounts of aged receivables.

51. Pursuant to the Billing Agreement and as requested by Meridian, Med Pro also provided valuable consulting and training services to Meridian related to its medical billing practices. The value of those services totals thousands of dollars, for which Med Pro was paid no compensation.

## EARLY TERMINATION

52. On or about June 8, 2020, because of non-payment for months, Med Pro could not continue providing services to Meridian without payment and therefore agreed to terminate the Billing Agreement with Meridian.

53. In accordance with Section 5B of the Billing Agreement, on or about June 17, 2020, Med Pro issued to Meridian a Confirmation of Billing Agreement Termination and Notice of Non-Payment and Demand to Cure (the "Notice"), demanding immediate payment of the full compensation due and owing to Med Pro for services rendered prior to termination, as well as recompense for all claims handled and any payments collected for claims up until July 7, 2020. A copy of the Notice is attached hereto as **Exhibit D.**

54. In the Notice and pursuant to the Billing Agreement, Med Pro also requested a payment report for collections for Meridian's Valley Vista facility; May and June's payment reports for its facilities at Procentive, Valley Vista, and MedEz; and July's payments received with a check date or EFT date on or before July 7, 2020. Said reports will demonstrate additional amounts Meridian owes Med Pro for collection of receivables.

55. Med Pro also stated in the Notice that "at this juncture" it would be willing to waive compensation for hundreds of hours spent consulting with Meridian regarding its internal operations. However, immediate payment was not made of the amounts due, such that Med Pro's offer, in a spirit of compromise, to forego payment for consulting services was rejected by Meridian.

## DAMAGES TO MED PRO

56. As of the date of this Complaint, Meridian has failed and has refused to pay all compensation due and owing to Med Pro for services performed under the Billing Agreement, including the $855,534, billed to Meridian for April and May, plus interest and attorney's fees.

8

57. By reason of the foregoing, Med Pro's business has been severely damaged and was required to close.

58. As a result of Meridian's breach of contract and other misconduct, Med Pro has been unable to pay vendors and employees who Med Pro hired to perform services required under the Billing Agreement.

59. It was necessary for Med Pro to retain undersigned counsel to seek full compensation for amounts it is owed under the Billing Agreement and to institute and prosecute this action.

60. Pursuant to Section 15 of the Billing Agreement, in the event legal services are used in connection with the collection or enforcement arising from or related to the Billing Agreement, the prevailing party is entitled to reasonable attorney's fees and costs.

61. As a result of Meridian's breach of contract and other misconduct alleged herein, Med Pro has been damaged, as follows:

   a. Med Pro is entitled payment for the $855,534, billed to Meridian for April and May, plus interest and attorney's fees.

   b. Med Pro is entitled to payment for additional amounts collected for April and May, as will be shown by audit of Meridian's books and records, plus interest and attorney's fees.

   c. Med Pro is entitled to payment for collections received by Meridian for the 90 days after termination of the contract, as will be shown by audit of Meridian's books and records, plus interest and attorney's fees. Alternatively, Med Pro is entitled to payment for three months collections, determined by averaging the payments earned for April and May. This amount exceeds $1 million.

   d. Med Pro is entitled to compensation for the consulting and administrative work performed for Meridian, in an amount to be determined at trial.

   e. Med Pro is entitled to damages for essentially destroying Med Pro's business, due to Meridian's failure and refusal to pay amounts due and owing under the contract, in an amount to be determined at trial.

   f. Attorney's fees and costs related to collection efforts against Meridian, including this action to enforce the Billing Agreement.

## **COUNT I - BREACH OF CONTRACT**

The allegations contained in paragraphs 1 through 61 are re-alleged herein as if set forth in their entirety.

62. Pursuant to the Billing Agreement, Med Pro agreed to provide billing, collection and other services to Meridian, and Meridian was required to compensate Med Pro in accordance with the contract and within a certain time from being invoiced for the amounts due to Med Pro.

63. Med Pro performed its obligations under the Billing Agreement by billing and collecting large amounts of money for the benefit of Meridian, as well as providing other auxiliary services to Meridian.

64. Contrary to the Billing Agreement, Meridian failed and refused to timely pay all compensation due and owing to Med Pro for the services it performed under the Billing Agreement.

65. Meridian also failed or refused to provide Med Pro access to its books and records so that Med Pro could determine additional amounts owing to Med Pro under the contract.

66. Meridian's failure and refusal to fully compensate Med Pro for services performed under the Billing Agreement and to comply with the payment demand set out in the Notice constitute a material breach of the Billing Agreement.

67. As a result of Meridian's breach of contract, Med Pro has suffered significant damages in excess of $2 million.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and costs incurred to seek collection from Meridian and to prosecute this action, and such other and further relief as the Court may deem just and proper.

**COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

The allegations contained in paragraphs 1 through 67 are re-alleged herein as if set forth in their entirety.

68. There is a covenant of good faith and fair dealing that is implied in contracts governed by Florida law. That covenant requires both sides to conduct themselves in good faith and fair dealing with the other.

69. Med Pro and Meridian were parties to the Billing Agreement, described *supra*.

70. Pursuant to the Billing Agreement, Med Pro agreed to provide billing, collection and other services to Meridian, and Meridian was required to compensate Med Pro in accordance with a specific compensation schedule and within a certain time from being invoiced for the amounts due to Med Pro.

71. Med Pro performed its obligations under the Billing Agreement by billing and collecting large amounts of money for the benefit of Meridian, as well as providing other auxiliary services to Meridian.

72. Contrary to the Billing Agreement, Meridian failed and refused to pay all compensation due and owing to Med Pro for services performed under the Billing Agreement.

73. There was no justification or explanation offered by Meridian for failing and refusing to fully compensate Med Pro for the services rendered, including after receiving the payment demand set out in the Notice.

74. Meridian breached the implied covenant of good faith and fair dealing by failing and refusing, without any justification, to promptly onboard Med Pro once the Billing Agreement was executed, by not providing Med Pro the information and access needed to perform the contract with Meridian, by not turning over to Med Pro all of the billing and

collection functions as promised and agreed, and by refusing to pay Med Pro the substantial compensation that is due and owing to Med Pro, and by the other misconduct alleged herein.

75. As a result of Meridian's breach of the implied covenant, Plaintiff has suffered significant damages.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and costs incurred to seek collection from Meridian and to prosecute this action, and such other and further relief as the Court may deem just and proper.

## COUNT III – AUDIT AND ACCOUNTING

The allegations contained in Sections 1 through 75 are re-alleged herein as if set forth in their entirety.

76. Med Pro seeks an audit and accounting to determine all amounts owed by Meridian to Med Pro under the terms of the Billing Agreement.

77. Section 4 B. of the Billing Agreement expressly allows for at least one audit per year of Meridian's books and records for the purposes of verifying Net Collections and amounts due as compensation to Med Pro under the Billing Agreement.

78. When the Billing Agreement was terminated, Meridian cut off Med Pro's access to the Meridian system so that Med Pro has been unable to determine the amounts collected since termination, for which Med Pro is entitled to compensation.

79. Based on the numerous weekly billings and collections of various amounts of money for the benefit of Meridian for several months while the Billing Agreement was in effect and given the specific and detailed compensation schedule used to determine the amount of compensation due to Med Pro, there is a need for an audit and accounting of Meridian's books and records to verify Net Collections and amounts due as compensation to Med Pro.

WHEREFORE, Plaintiff, prays that this Honorable Court order, at Defendant's expense, an audit of Defendant's books and records to determine all Net Collections and amounts due as compensation to Plaintiff, award Plaintiff its reasonable attorney's fees and costs incurred to seek collection from Meridian and to prosecute this action, and such other and further relief as the Court may deem just and proper.

## **COUNT IV – UNJUST ENRICHMENT**

The allegations contained in Sections 1 through 79 are re-alleged herein as if set forth in their entirety.

80. Meridian has been unjustly enriched by requesting and then accepting the benefits of Med Pro's services without paying just compensation for same.

81. Med Pro conferred a tangible financial benefit upon Meridian by performing services, including the transmitting weekly billings and collecting large amounts for money for Meridian and also providing consulting and training services from February 3, 2020 until termination on or about June 8, 2020.

82. Meridian requested Med Pro to provide said services and had knowledge of the benefit conferred upon it by virtue of Med Pro's services.

83. Meridian has accepted and retained the benefit conferred upon it, but Meridian has failed to remit compensation due to Med Pro based on the total monthly collections for the relevant months. Meridian has also paid nothing for the valuable training and consulting services it requested and were provided by Med Pro.

84. The circumstances are such that it would be inequitable for Meridian to retain the benefit conferred on it without providing fair value for same to Med Pro.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and

costs incurred to prosecute this action, and such other and further relief as the Court may deem just and proper.

### COUNT V - FRAUDULENT MISREPRESENTATION

The allegations contained in paragraphs 1 through 84 are re-alleged herein as if set forth in their entirety.

85. This is an action for fraudulent misrepresentation against Meridian arising from the Representations, described *supra*.

86. In late 2019 and early 2020, Med Pro and Meridian entered into discussions for a business arrangement whereby Med Pro would provide medical billing and collection services to Meridian, along with related administrative and consulting services.

87. Meridian had large amounts of past due and owing accounts receivable which Meridian was unable to timely collect because of its lack of expertise, inadequate processes, lack of management oversight and antiquated computer systems and billing practices. Meridian sought assistance from Med Pro to rework its billing and collection processes and undertake to collect its past due receivables.

88. After meetings and exchanges of information, Meridian, through its authorized employees, agents and representatives, made the previously described Representations to induce Med Pro to enter into the Billing Agreement.

89. In reliance on Meridian's Representations, on or about February 3, 2020, Med Pro entered into the Billing Agreement and began providing to Meridian a variety of billing, administrative and consulting services. The Representations made to Med Pro were false, as Meridian never intended to turn over all of its billing and collections work to Med Pro and did not intend to adequately compensate Med Pro for its work. Meridian also did not intend to

14

provide Med Pro full access to the Meridian accounting information and computer systems Med Pro needed to perform its contract with Meridian.

90. Meridian made the Representations intentionally to induce MedPro to enter into the Billing Agreement and to take from Med Pro its "know how" and knowledge about specialized medical billing and collection techniques that Meridian needed in order to convert its sizeable aged accounts receivable into cash.

91. Meridian knew that the Representations were false when they were made, or alternatively, Meridian made the representations without knowledge of their truth or falsity and with no intent to perform under the Billing Agreement.

92. In making the false Representations, Meridian intended that MedPro rely or act on them.

93. MedPro relied on the false Representations to its detriment in deciding to enter into the Billing Agreement, hiring additional employees and vendors, and devoting its resources to Meridian, to the exclusion of other clients and customers.

94. As a result of Meridian's false Representations, MedPro has suffered substantial damages as outlined herein.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and costs incurred to prosecute this action, and such other and further relief as the Court may deem just and proper.

**COUNT VI – NEGLIGENT MISREPRESENTATION**

The allegations contained in paragraphs 1 through 94 are re-alleged herein as if set forth in their entirety.

95. This is an action for negligent misrepresentation against Meridian arising from the misrepresentations, described in paragraph 22.

96. In the alternative, Meridian was negligent in making the foregoing Representations because it should have known the Representations were false and/or that the management of Meridian had no intention of performing as represented.

97. In making the Representations, Meridian intended for MedPro to rely on them.

98. MedPro justifiably relied on the Representations to its detriment, including entering into the Billing Agreement and performing substantial services to Meridian for no compensation.

99. As a result of Meridian's negligent misrepresentations, MedPro has suffered substantial damages.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and costs incurred to prosecute this action, and such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Med Pro demands a jury to try this cause.

WHEREFORE, Plaintiff, prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant for damages, award Plaintiff its reasonable attorney's fees and costs incurred to seek collection from Meridian and to prosecute this action, and such other and further relief as the Court may deem just and proper.

This March 12, 2021.                    Respectfully submitted,

By:     /s/ *Samuel L. Felker*
        Samuel L. Felker
        Florida Bar No.: 123800
        Desislava K. Docheva
        Florida Bar No.: 1010440
        samfelker@bakerdonelson.com
        ddocheva@bakerdonelson.com

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
1 Financial Plaza, Suite 1620
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1628
Facsimile: (954) 333-7636

Counsel for Plaintiff Med Pro Billing, Inc.